UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
AMITIA BACHAN

                                     Plaintiff,                 Index No:

                      v.                                **VERIFIED COMPLAINT**
                                                            **AND JURY DEMAND**

TWU Local 100 NYCT Training and Upgrading Fund;
TWU Local 100 NYCT Childcare Fund, Charles Jenkins
Nicole Hecker, and Jennifer Dodd

                                    Defendants,
-------------------------------------------------------------------------x

       Plaintiff, Amitia Bachan, by and through his attorneys, Lally & Misir, LLP, as and for his Complaint against the Defendants herein, alleges, upon personal knowledge and upon information and belief as to all other matters:

## JURISDICTION AND VENUE

    1.  This is a civil action brought pursuant to Title VII of the Civil Rights Act, as amended, 42 U.S.C. § 2000, et seq., 42 U.S.C. § 1981, N.Y. Exec. Law § 296, other state laws, and any other cause of action which can be inferred from the facts set forth herein, to redress discrimination against Plaintiff in the terms, conditions and privileges of employment of Plaintiff by the Defendants, as well as deprivation by the Defendants of the rights, privileges and immunities secured to Plaintiff by the laws of the United States.

    2.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

    3.  Venue is proper pursuant to 28 U.S.C. § 1391.

    4.  Plaintiff is entitled to a jury trial pursuant to 18 U.S.C. §1514A(b)(2)E.

## PARTIES

1. That the Plaintiff, Amitia Bachan, is a resident of the State of New York, in the Eastern District of New York.

2. That at all times mentioned herein, the Defendant, TWU Local 100 NYCT Training and Upgrading Fund ("TWU Training"), is a New York Corporation.

3. That at all times mentioned herein, the Defendant, TWU Local 100 NYCT Childcare Fund ("TWU Childcare"), is a New York Corporation.

4. That at all times mentioned herein, the Defendant, Charles Jenkins, is and has been a resident of the State of New York.

5. That at all times mentioned herein, the Defendant, Nicole Hecker, is and has been a resident of the State of New York.

6. That at all times mentioned herein, the Defendant, Jennifer Dodd, is and has been a resident of the State of New York.

## STATEMENT OF RELEVANT FACTS

7. The Plaintiff, Mr. Bachan, has a Bachelor of Arts in Computer Sciences and has a Network Plus Certification.

8. Mr. Bachan was employed with the Defendants, TWU Training and TWU Childcare (collectively "TWU Funds"), from November 2004 to July 14, 2017.

9. The Defendants, Charles Jenkins and Nicole Hecker, are Acting Directors of the TWU Funds, and were the Plainitff's direct supervisors during his employment with the TWU Funds.

10. The Defendant, Jennifer Dodd, is the Director of Administration & Business Operations of the Funds, and was also one of the Plaintiff's direct supervisors during his employment with the TWU Funds.

11. The Plaintiff, Mr. Bachan, was employed with the TWU Funds as a database and network administrator.  His responsibilities encompassed all Internet Technology ("IT") items, including: maintaining servers and PCs, maintaining networking, maintaining security systems and card access, CCTV security system maintenance, administrating windows server exchange, database development and maintenance, website development and maintenance, maintenance of Avaya telephone equipment, network trouble shooting, and database programming.  Additionally Mr. Bachan maintained the TWU Funds' computer lab and classroom, and kept record of inventories.

12. The Plaintiff, Mr. Bachan, was forced out from his position with the TWU Funds after thirteen (13) years, due to racial discrimination, and hostility and retaliation in the workplace by the Defendants in response to Mr. Bachan's involvement in organizing an employees' union.  (See Exhibit "A", Mr. Bachan's Resignation letter, dated July 3, 2017).

13. That the Defendant Directors were hired by Defendant TWU Funds union in 2013, 2015, and 2016.

14. That all three Defendant Directors are of African-American descent, and began a policy of racial discrimination in hiring, promoting, and firing the employees of the Union.

15. That Defendant, would hold racially-exclusionary events—and invite only the African American employees.  Whites, Asian, and Hispanic employees were excluded.

16. That as a result of Defendant's discriminatory policies, the workforce of Defendant TWU Funds became overwhelmingly African American.

17. That at the time of Plaintiff being forced out of Defendant TWU Funds, over eighty percent (80%) of the employees were African-American. After Plaintiff was forced out, the only Hispanic employee, Tashhera Santiago, was also fired.

18. That in approximately 2014, the Defendant Charles Jenkins began operating a racially-exclusionary organization, the Coalition of Black Labor Unions ("CBLU"), out of the Defendant TWU Funds offices. That Defendant, Mr. Jenkins, spent over fifty percent (50%) of his time on CBLU activity.

19. On or about June 2016, the Plaintiff, Mr. Bachan, and several other employees of the TWU Local Funds, began a union organization for the employees of TWU Funds. The union is named Office for Professional Employee International Union 153 ("OPEIU 153").

20. The Plaintiff, Mr. Bachan, was one of the key people in the organization of this union. He was involved in negotiations, discussions, and the drafting of the Collective Bargaining Agreement.

21. The Defendants, Mr. Jenkins, Ms. Hecker, and Ms. Dodd, retaliated against their employees—particularly the non-African-American employees—for organizing a union. The Defendants retaliated by restricting the Plaintiff, Mr. Bachan, access to different equipment, reducing and limiting his prior job responsibilities, and created a hostile work environment.

22. The Plaintiff, Mr. Bachan, after thirteen (13) years of employment and experience with TWU Funds, was now told he must get authorization from his supervisors prior to

completing any tasks, which were a part of his daily responsibilities and for which he previously never needed authorization. For example, even to simply update a server, Mr. Bachan now had to notify his supervisors and get the authorization to proceed. Previously he completed this task without having to notify his supervisors or getting "permission" to do so.

23. The Plaintiff, Mr. Bachan, was responsible for reviewing security systems footage for the Defendants, TWU Funds. The Defendants, Mr. Jenkins, Ms. Hecker, and Ms. Dodd, then refused to let Mr. Bachan to continue to review footage without their supervision.

24. The Defendants retaliated against Mr. Bachan by restricting his use and access to office equipment. The Defendants demanded that the Plaintiff, Mr. Bachan, was no longer allowed to access the storage room of the office without authorization and supervision by one of his direct supervisors.

25. The Plaintiff, Mr. Bachan, was moved from his own private office to a shared office.

26. The Plaintiff was constantly told by his supervisors to keep computer software equipment off his desk, which made it difficult for Mr. Bachan to do his work, complete his responsibilities, and created a hostile work environment.

27. On or about May 2017, a security audit took place at the TWU Funds office, and the Defendants took/gave to the auditors the Plaintiff's personal laptop, which contained Plaintiff's personal information, without his consent or knowledge.

28. The Plaintiff, Mr. Bachan, signed, dated, and submitted his resignation letter at Defendant's office on July 3, 2017. His resignation provided a two week notice - with his last day of employment with the Funds being July 14, 2017.

29. None of Mr. Bachan's supervisors – the Defendants, Mr. Jenkins, Ms. Hecker, and Ms. Dodd, were in the office on July 3rd and July 4th. On July 5, 2017, when Mr. Bachan's supervisors returned to the office they received the resignation letter, providing notice of his resignation as of July 3, 2017.

30. The Plaintiff, Mr. Bachan, had previously requested and been approved for vacation days from July 10th through July 14th. This request was submitted prior to Mr. Bachan's resignation and did not interfere with the notice requirement of his resignation. Despite being on vacation, Mr. Bachan worked remotely from July 10 July 14 to ensure a smooth transition for the TWU Funds.

31. On July 13, 2017, the Defendants sent Mr. Bachan their acknowledgment of his resignation, and stated that they would pay him for "any accrued but unused vacation time." (See Exhibit "B", Defendant's Acknowledgment letter, dated July 13, 2017).

32. Prior to Defendants acknowledgment of the Plaintiff's resignation, Mr. Bachan, also offered to continue to work after July 14th, to effectuate a smooth transition, however, he was told by the Defendants, Mr. Jenkins, Ms. Hecker, and Ms. Dodd, that the TWU Funds were not interested in him staying on after July 14, 2017 and assured him that he was not needed beyond the resignation date.

33. The Plaintiff, Mr. Bachan, at the time of his resignation had accrued unused sick, personal, and vacations days, and pursuant to his Employment Contract, he was entitled to payment for those days. The Defendants refused to pay Mr. Bachan for the accrued but unused sick, personal, and vacation days, in violation of their Employee Manual. (See Exhibit "C", Employee Manual).

34. On July 18, 2017, after Mr. Bachan's resignation date, Defendants collectively sent Plaintiff a letter stating that he was not entitled to the accrued but unused vacation pay because he did not give the Defendants a full two weeks' notice—after Mr. Bachan offered to stay beyond his resignation date and after Defendant's assured him that he was not needed. (See Exhibit "D", Defendant's Denial Letter, dated July 18, 2017).

35. The Plaintiff, Mr. Bachan, had accrued the following unused hours: a) personal–27.45 hours; b) sick–730 hours; c) vacation–88 hours. Based on Mr. Bachan's hourly pay - $47.63 - and the 9% matched by the Funds for his 401K, this amounts to a total due of $50,952.04 due to Mr. Bachan at this time.

36. On or about September 26, 2017, the Plaintiff, Mr. Bachan, through his attorneys, sent a demand letter to the Defendants, demanding payment for Mr. Bachan's unused hours. (See Exhibit "E", Demand Letter, dated September 26, 2017).

37. On or about October 16, 2017, the Defendants responded to the Plaintiff's demand letter, and denied his demand for any payments.

38. The Plaintiff, Mr. Bachan, provided adequate two (2) week notice of his resignation, continued his job responsibilities during the notice period, and even completed work from home during his pre-approved vacation days.

39. The Defendants are attempting to steal the earned wages and compensation of the Plaintiff, whereby employing unfair labor practices to retaliate against an employee for organizing a union.

40. The Plaintiff, Mr. Bachan, demands judgment against Defendants, TWU Training, TWU Childcare, Mr. Jenkins, Ms. Hecker, and Ms. Dodd, jointly and severally, as set forth below:

## CAUSES OF ACTION

### CAUSES OF ACTION 1-2
### INTENTIONAL DISCRIMINATION AND
### HOSTILE WORK ENVIRONMENT

### AND AS AND FOR THE FIRST CAUSE OF ACTION –INTENTIONAL

### DISCRIMINATION BASED ON RACE, NATIONAL ORIGIN, AND SEX, IN

### VIOLATION IN VIOLATION OF 42 U.S.C. § 1981

41. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs of the Complaint as though set forth at length herein, as and against Defendants.

42. This claim is authorized and instituted pursuant to 42 U.S.C. § 1981, based upon the discriminatory employment practices of Defendants.

43. Specifically, Mr. Bachan complains that Defendants created a hostile work environment, due to discrimination, on the basis of his race, national origin, and sex.

44. In addition, the evidence in this case shows that a specific basis exists for imputing the conduct that created the hostile environment to the employer.

45. Section 1981 provides a cause of action for race-based employment discrimination based on a hostile work environment. (*See* Whidbee Garzarelli Food Specialties, Inc., 223 F.3d 62 at 69 (2d Cir 2000); *See also* Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1189 (2d Cir. 1987).

46. Hostile work environment claims under Section 1981 are analyzed under the Title VII framework. *Id.* (hostile work environment claim under Section 1981 assessed under the Title VII framework);

47. "A hostile working environment is shown when the incidents of harassment occur either in concert or with a regularity that can reasonably be termed pervasive." (See <u>Lopez v. S.B. Thomas, Inc.</u>, at 1189.)

48. Whether the  environment may be considered sufficiently hostile to support a hostile work environment claim is to be measured by the totality of the circumstances, including the frequency and severity of the discriminatory conduct, whether such conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance. *See* <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 22, 126 L. Ed. 2d 295, 114 S. Ct. 367 at 23 (1993)

49. The Directors, Jenkins, Hecker, and Dodd, collectively and individually would use rude and disparaging racial remarks about TWU Fund employees.   Mr. Bachan is an immigrant and the only person of Indian descent in the office who came to the United States at the age of fourteen (14).  He speaks with a foreign accent.  Mr. Jenkins would often tell Mr. Bachan "you dun know what chew doin'" and mimic Mr. Bachan's foreign accent while he was speaking.

50. Mr. Bachan also witnessed Mr. Hecker stating that "She (Ms. Tashhera Santiago) is a Puerto Rican—you know how they are," and "She (Ms. Tashhera Santiago) doesn't know how to talk," and "Puerto Ricans don't know how to work."  Ms. Tashhera Santiago was later fired.

51. Mr. Jenkins would often tell other employees, with whom Mr. Bachan worked on a daily basis, that "He (Mr. Bachan) dun know wut he doin...."  Mimicking a foreign accent.

52. Also, Ms. Dodd told other African-American employees <u>not</u> to have personal conversations with Mr. Bachan, and the Director's would watch the employees very closely to make sure no one did.

53. The Directors would hold racially exclusive events which would only allowed African Americans to attend. Anyone who was not African American would not be invited. The Directors held "black only" events, at the office, such as seminars and social receptions.

54. The Directors also ran the Coalition for Black Labor Unions ("CBTU") directly out of the TWU Fund offices and selected employees, who were African American, were invited to attend CBTU events. At one specific event hosted by CBTU, the NYC Mayor, NY Governor, NY Attorney General, and a United States Senator attended. During these events, the Directors would raise political funds for elected officials.

55. The Directors would hire only other African American workers. After 2015, only African American workers were hired at TWU Funds.

56. This, coupled with Mr. Bachan's Union activities created an environment which forced Mr. Bachan to find new employment outside of the TWU Fund organization.

57. The Plaintiff, Mr. Bachan, demands judgment against Defendants, TWU Training, TWU Childcare, Mr. Jenkins, Ms. Hecker, and Ms. Dodd, jointly and severally, in the amount of ten million dollars ($10,000,000.00), and no less than $250,000.00 dollars in attorneys' fees for pursuing this action.

## AS AND FOR THE SECOND CAUSE OF ACTION – CREATION OF HOSTILE WORK ENVIRONMENT DUE TO DISCRIMINATION BASED ON RACE, NATIONAL ORIGIN, AND SEX, IN VIOLATION OF NEW YORK EXECUTIVE LAW §296

58. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs of the Complaint as though set forth at length herein, as and against Defendants.

59. This claim is authorized and instituted pursuant to Section 296 of the New York Executive Law, based upon the discriminatory employment practices of Defendants.

60. During the course of his employment and before the Directors were hired—Mr. Jenkins in 2013, Ms. Hecker in 2015, and Ms. Dodd in 2016—Mr, Bachan had received excellent ratings and feedback. Mr. Bachan was discriminated against by the Defendants, Hecker, Jenkins, and Dodd, and as a result he was subject to discriminatory terms and conditions of employment, and was forced to find new employment due to the hostile work environment.

61. The Defendants, Hecker, Jenkins, and Dodd, intentionally discriminated against Mr. Bachan because of his race.

62. Ms. Hecker used her position to obtain a job for her husband, "Nate," within Local 100. She would often come into the office and just start screaming at Mr. Bachan and other non-African-American employees in the office.

63. By limiting his ability to do his job and the Defendant's constantly berating his work, Mr. Bachan was adversely affected by the Defendant's actions and he was forced to find new employment.

64. The Plaintiff, Mr. Bachan, demands judgment against Defendants, TWU Training, TWU Childcare, Mr. Jenkins, Ms. Hecker, and Ms. Dodd, jointly and severally, in the amount of ten million dollars ($10,000,000.00), and no less than $250,000.00 dollars in attorneys' fees for pursuing this action.

## CAUSES OF ACTION 3-5
## RETALIATION AND UNION ACTIVITIES

### AS AND FOR THE THIRD CAUSE OF ACTION – RETALIATION IN

### VIOLATION OF NEW YORK EXECUTIVE LAW §296

65. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs of the Complaint as though set forth at length herein, as and against Defendants.

66. This claim is authorized and instituted pursuant to Section 296 of the New York Executive Law, based upon the discriminatory employment practices of Defendants.

67. "Pursuant to Executive Law §296, it is unlawful to retaliate against an employee because he or she opposed statutorily forbidden discriminatory practices" (Adeniran v State of New York, 106 AD3d 844, 844 (2d Dept 2013)).

68. To make a prima facie showing of retaliation under Executive Law § 296, a plaintiff must show that: (1) he or she has engaged in protected activity, (2) the employer was aware that the plaintiff participated in such activity, (3) the plaintiff suffered an adverse employment action based upon that activity, and (4) there is a causal connection between the protected activity and the adverse action (see Forrest v Jewish Guild for the Blind, 3 NY3d 295, 313; Thide v New York State Dept. of Transp., 27 AD3d 452, 454). .

69. An employee engages in a "protected activity" by "opposing or complaining about unlawful discrimination" (Forrest v Jewish Guild for the Blind, 3 NY3d at 313; see Executive Law § 296[1][e]; [7]).

70. During his time at TWU Funds, Mr. Bachan made complaints to the supervisors about the Director's unconstitutional and illegal discrimination by the Defendant, TWU Funds.

71. Due to these complaints, Mr. Bachan was retaliated against, through Defendant's restriction of privileges and hindrances and hostile treatment in the work place.

72. The Plaintiff, Mr. Bachan, demands judgment against Defendants, TWU Training, TWU Childcare, Mr. Jenkins, Ms. Hecker, and Ms. Dodd, jointly and severally, in the amount of ten million dollars ($10,000,000.00), and no less than $250,000.00 dollars in attorneys' fees for pursuing this action.

## AS AND FOR THE FOURTH CAUSE OF ACTION – UNFAIR LABOR PRACTICES IN VIOLATION OF NEW YORK LABOR LAW § 704.

73. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs of the Complaint as though set forth at length herein, as and against Defendants.

74. This claim is authorized and instituted pursuant to unfair labor practices of the Defendants in violation of New York Labor Law § 704.

75. The Defendants retaliated especially against him—as an Asian American—when he began organizing and joining a union.

76. The Defendants took aggressive and discriminatory action against Mr. Bachan—verbally insulting him in the office; restricting his ability to perform his job; moving his office; requiring humiliating oversight to his prior job functions; restricting his access to necessary job tasks—that Defendant's did not impose upon Defendant's African-American employees.

13

77. The Defendants actions against Mr. Bachan were specifically aggressive, insulting, and damaging to him, because Mr. Bachan was of Asian descent, and not an African-American.

78. The Plaintiff, Mr. Bachan, demands judgment against Defendants, TWU Training, TWU Childcare, Mr. Jenkins, Ms. Hecker, and Ms. Dodd, jointly and severally, in the amount of ten million dollars ($10,000,000.00), and no less than $250,000.00 dollars in attorneys' fees for pursuing this action.

## AS AND FOR THE FIFTH CAUSE OF ACTION – DISCRIMINATION AGAINST ENGAGEMENT IN CERTAIN ACTIVITIES IN VIOLATION OF NEW YORK LABOR LAW § 201-D

79. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs of the Complaint as though set forth at length herein, as and against Defendants.

80. This claim is authorized and instituted pursuant to discrimination against engagement in certain activities in violation of New York Labor Law § 201-D.

81. Specifically, Mr. Bachan complains that the Defendants discriminated against him for organizing and joining a union.

82. "It shall be unlawful for any  employer  or  employment agency to refuse to hire, employ or license, or  to discharge  from  employment  or  otherwise  discriminate against an  individual in compensation, promotion or terms, conditions or privileges  of employment because of an  individual's  membership  in a union or any exercise of rights granted under Title 29, USCA, Chapter 7 or under article fourteen of the   civil service law". NY Labor Law § 201-D (2)(d).

83.  On or about June 2016, the Plaintiff, Mr. Bachan, and several other employees of the TWU Local Funds, began a union organization for the employees of TWU Funds. The union is named Office for Professional Employee International Union 153 ("OPEIU 153").

84.  The Plaintiff, Mr. Bachan, was one of the key people in the organization of this union. He was involved in negotiations, discussions, and the drafting of the Collective Bargaining Agreement.

85.  The Defendants, Mr. Jenkins, Ms. Hecker, and Ms. Dodd, discriminated against their employees for organizing a union. The Defendants discriminated against the Plaintiff, Mr. Bachan, and other employee by restricting their access to various equipment, and creating a hostile work environment.

86.  The Plaintiff, Mr. Bachan, after thirteen (13) years of employment and experience with TWU Funds, was now told he must get authorization from his supervisors prior to completing any tasks, which were a part of his daily responsibilities and for which he previously never needed authorization. For example, even to simply update a server, Mr. Bachan now had to notify his supervisors and get the authorization to proceed. Previously he completed this task without having to notify his supervisors or being authorized to do so.

87.  The Plaintiff, Mr. Bachan, was responsible for reviewing security system footage for the Defendants, TWU Funds. The Defendants, Mr. Jenkins, Ms. Hecker, and Ms. Dodd, refused to let Mr. Bachan to continue to review footage without their supervision.

88.  The Defendants discriminated against Mr. Bachan for organizing and joining a union restricting his use and access to office equipment. The Defendants demanded that the

Plaintiff, Mr. Bachan, was no longer allowed to access the storage room of the office without authorization and supervision by one of his direct supervisors.

89. The Plaintiff, Mr. Bachan, was moved from his own office to a shared office.

90. The Plaintiff was constantly told by his supervisors to keep computer software equipment off his desk, which made it difficult for Mr. Bachan to complete his responsibilities, and created a hostile work environment.

91. On or about May 2017, a security audit took place at the TWU Funds office, and the Defendants gave the auditors the Plaintiff's personal laptop without his consent or knowledge.

92. Upon information and belief, other employees also experienced this discrimination for organizing and joining a union by the Defendants restricting their access to necessary data, and by creating a hostile work environment. Several employees resigned as a result of this.

93. The Plaintiff, Mr. Bachan, demands judgment against Defendants, TWU Training, TWU Childcare, Mr. Jenkins, Ms. Hecker, and Ms. Dodd, jointly and severally, in the amount of ten million dollars ($10,000,000.00), and no less than $250,000.00 dollars in attorneys' fees for pursuing this action.


## CAUSES OF ACTION 6-11
## ACCRUED SICK AND VACATION PAY CLAIMS

## AS AND FOR THE SIXTH CAUSE OF ACTION – UNPAID SUPPLEMENTAL WAGES
## IN VIOLATION OF NEW YORK LABOR LAW § 198-C

94. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs of the Complaint as though set forth at length herein, as and against Defendants.

95. This claim is authorized pursuant to New York Labor Law § 198-c.

96. "An employer is required to pay accrued vacation to an employee upon separation from employment if its policy or contract requires it." NY Labor Law § 198-c.

97. Vacation and sick pay are matters of contract between an employer and employee.  (See Litras v. PVM Intern Corp., 2013 U.S. Dist. LEXIS 116236, 2013 WL 4118482 *10 (August 15, 2013)).

98. To prevail on a claim that a party is owed accrued vacation, sick, and holiday pay, Plaintiff must demonstrate "the existence of an agreement entitling them to such pay upon separation of service." (Id.; See also Gennes v. Yellow Book of N.Y., Inc., 23 A.D.3d 520, 522, 806, N.Y.S.2d 646 (2d Dep't 2005) stating that "the primary dispositive issue in applying Section 198-c(1) is whether there was any basis for the accrual of vacation benefits."; Glenville Cage Co. v. Indus. Bd. of Appeals, 70 A.D.2d, 283, 284 421 N.Y.S.2d 408 (3d Dep't 1979) stating that the "accrual of vacation pay…is a matter of agreement to provide such benefits," and citing both the employer's written notice and the employee's testimony concerning the employer's custom in determining the terms of agreement; Crawford v. Coram Fire Dist., 2015, U.S. Dist. LEXIS 57997, (EDNY May 4, 2015, Civil Action No. 12-3850).

99. The parties entered into an employment Contract in November 2004, which was renewed annually.

100. The Employee Manual reads in relevant part: "If you decide to resign your employment with the Fund, we expect that you will give us as much notice as possible in writing but at least two (2) weeks notice."  (See Exhibit "B", Employee Manual, page 15).

101. The Plaintiff, Mr. Bachan signed, dated, and submitted his resignation letter on July 3, 2017.  His resignation provided a two week notice - with his last day of employment with the Funds being July 14, 2017.  Mr. Bachan went to work on July 3, 2017 with his signed resignation letter.  Mr. Bachan also offered to continue to work after July 14th, to effectuate a smooth transition.  Defendant's told Mr. Bachan that the Funds were not interested in him staying on.

102. The Plaintiff, Mr. Bachan, at the time of his resignation had accrued unused sick, personal, and vacations days.  The Defendants refused to pay Mr. Bachan for the accrued but unused sick, personal, and vacation days, in violation of their Employee Manual.

103. The Funds' Employee Manual states in relevant part regarding vacation days on page 22: "In the event that an employee resigns or is laid-off and provides the appropriate amount of notice, the employee shall receive payment for accrued but unused vacation days from the year in which the employee resigns".

104. Page 24 of the Funds' Employee Manual contains the provision regarding unused sick days, and reads: "In the event that an employee resigns or is terminated through no fault of their own and provides the appropriate amount of notice, employees shall receive payment for accrued but unused sick days".

105. Accordingly Mr. Bachan had accrued the following unused hours: a) personal–27.45 hours; b) sick–730 hours; c) vacation–88 hours.  Based on Mr. Bachan's hourly pay -

$47.63 - and the 9% matched by the Funds for his 401K, this amounts to a total due of $50,952.04 due to Mr. Bachan at this time.

106. The Defendants have refused and failed to make payment to the Plaintiff, Mr. Bachan, for his accrued sick, vacation, and personal days, and are in breach of their employee Contract.

107. The Plaintiff, Mr. Bachan, demands judgment against Defendants, TWU Training, TWU Childcare, Mr. Jenkins, Ms. Hecker, and Ms. Dodd, jointly and severally, in the amount of fifty thousand and nine hundred and fifty-two dollars and four cents ($50,952.04), plus interest, and no less than $250,000.00 dollars in attorneys' fees for pursuing this action.

## AS AND FOR THE SEVENTH CAUSE OF ACTION - BREACH OF CONTRACT

108. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs of the Complaint as though set forth at length herein, as and against Defendants.

109. That to succeed in a breach of contract claim, four elements must be satisfied: the making of a contract, performance of the contract by the plaintiff, breach of the contract by the defendant, and damages suffered by the plaintiff". Coastal Aviation, Inc. v. Commander Aircraft Co., 937 F. Supp. 1051, 1060 (S.D.N.Y. 1996), aff'd, 108 F.3d 1369 (2d Cir. 1997)); See also, Bell v. Pham, 2011 U.S. Dist. LEXIS 31141, 2011 WL 1142857 (S.D.N.Y. Mar. 24, 2011); Bio Hi-Tech Co. v. Comax, Inc., 2009 U.S. Dist. LEXIS 101768 (E.D.N.Y. July 27, 2009); Pfizer, Inc. v. Stryker Corp., 348 F. Supp. 2d 131, 146 (S.D.N.Y. 2004).

110. The parties entered into an employment Contract in November 2004, which was renewed annually.

111. The Plaintiff, Mr. Bachan, gave adequate notice of his resignation pursuant to the terms of the Employee Manual. The Employee Manual reads in relevant part: "If you decide to resign your employment with the Fund, we expect that you will give us as much notice as possible in writing but at least two (2) weeks notice." (See Exhibit "B", Employee Manual, page 15).

112. The Plaintiff, Mr. Bachan signed, dated, and submitted his resignation letter on July 3, 2017. His resignation provided a two week notice - with his last day of employment with the Funds being July 14, 2017. Mr. Bachan went to work on July 3, 2017 with his signed resignation letter. Mr. Bachan also offered to continue to work after July 14th, to effectuate a smooth transition. He was told that the Funds were not interested in him staying on.

113. The Plaintiff, Mr. Bachan, at the time of his resignation had accrued unused sick, personal, and vacations days. The Defendants refused to pay Mr. Bachan for the accrued but unused sick, personal, and vacation days, in violation of their Employee Manual.

114. The Funds' Employee Manual states in relevant part regarding vacation days on page 22: "In the event that an employee resigns or is laid-off and provides the appropriate amount of notice, the employee shall receive payment for accrued but unused vacation days from the year in which the employee resigns".

115. Page 24 of the Funds' Employee Manual contains the provision regarding unused sick days, and reads: "In the event that an employee resigns or is terminated through no fault of their own and provides the appropriate amount of notice, employees shall receive payment for accrued but unused sick days".

116. Accordingly Mr. Bachan had accrued the following unused hours: a) personal–27.45 hours; b) sick–730 hours; c) vacation–88 hours.  Based on Mr. Bachan's hourly pay - $47.63 - and the 9% matched by the Funds for his 401K, this amounts to a total due of $50,952.04 due to Mr. Bachan at this time.

117. The Defendants have refused and failed to make payment to the Plaintiff, Mr. Bachan, for his accrued sick, vacation, and personal days, and are in breach of their employee Contract.

118. The Plaintiff, Mr. Bachan, demands judgment against Defendants, TWU Training, TWU Childcare, Mr. Jenkins, Ms. Hecker, and Ms. Dodd, jointly and severally, in the amount of fifty thousand and nine hundred and fifty-two dollars and four cents ($50,952.04), and no less than $250,000.00 dollars in attorneys' fees for pursuing this action.

## AS AND FOR THE EIGHT CAUSE OF ACTION - BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

119. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs of the Complaint as though set forth at length herein, as and against Defendants.

120. Under New York law, there is a covenant of good faith and fair dealing implied in all contracts".  511 West 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153, 773 N.E.2d 496, 746 N.Y.S.2d 131 (2002).  "This covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, and may thus be breached by conduct not expressly forbidden by any contractual provision".  P.T.& L. Contr. Corp. v. Trataros Constr., Inc., 29 A.D.3d 763, 816 N.Y.S.2d 508 (2d Dep't 2006); See, Hbouss v. Coca-Cola Enters., 2006 U.S. Dist. LEXIS 54958, 2006 WL 2285598 (S.D.N.Y. Aug. 9,

2006); See also, Travelers Indem. Co. v. CDL Hotels USA, Inc., 322 F. Supp. 2d 482, 2004 U.S. Dist. LEXIS 11381 (S.D.N.Y. 2004).

121. The parties had an employment Contract and an Employee Manual governing the terms of the employment.

122. Pursuant to the Employee Manual, the Plaintiff had a right to receive payment for accrued but unused sick, personal, and vacation days at the time of his resignation.

123. The Defendants wrongfully refused to make payment to the Plaintiff for his accrued but unused sick, personal, and vacation days.

124. The Defendants are acting to destroy the Plaintiff, Mr. Bachan's, right to receive fruits of the employment Contract.

125. The Plaintiff, Mr. Bachan, demands judgment against Defendants, TWU Training, TWU Childcare, Mr. Jenkins, Ms. Hecker, and Ms. Dodd, jointly and severally, in the amount of two hundred thousand dollars ($200,000.00), plus interest, and no less than $250,000.00 dollars in attorneys' fees for pursuing this action.

**AS AND FOR THE NINTH CAUSE OF ACTION - UNJUST ENRICHMENT**

126. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs of the Complaint as though set forth at length herein, as and against Defendants.

127. "The elements of unjust enrichment are that the defendants were enriched, at the plaintiff's expense, and that it is against equity and good conscience to permit the defendants to retain what is sought to be recovered" Wells Fargo Bank, N.A. v Burke, 2017 N.Y. App. Div. LEXIS 7660, *7, 2017 NY Slip Op 07631, 3; See County of Nassau v Expedia, Inc., 120 AD3d 1178, 1180, 992 N.Y.S.2d 293; See also Old Republic Natl. Tit. Ins. Co. v Luft, 52 AD3d 491, 491-492, 859 N.Y.S.2d 261).

128. The Plaintiff, Mr. Bachan, was employed with the Defendants for thirteen (13) years. During his thirteen (13) years of employment, Mr. Bachan accrued sick, personal, and vacation days, which he is entitled to payment for upon his resignation.

129. The Plaintiff, Mr. Bachan, accrued the following unused hours: a) personal–27.45 hours; b) sick–730 hours; c) vacation–88 hours, which amounts to a total amount of $50,952.04 due to Mr. Bachan at this time.

130. The Defendants will be unjustly enriched at the Plaintiff, Mr. Bachan's, expense if they are allowed to retain the funds owed to Mr. Bachan pursuant to his employment Contract.

131. The Plaintiff, Mr. Bachan, demands judgment against Defendants, TWU Training, TWU Childcare, Mr. Jenkins, Ms. Hecker, and Ms. Dodd, jointly and severally, in the amount of fifty thousand and nine hundred and fifty-two dollars and four cents ($50,952.04), plus interest, and no less than $250,000.00 dollars in attorneys' fees for pursuing this action.

## AS AND FOR THE TENTH CAUSE OF ACTION – FRAUD

132. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs of the Complaint as though set forth at length herein, as and against Defendants.

133. "To prove common law fraud under New York law, a plaintiff must show that (1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance". In re WorldCom, Inc., 374 B.R. 94, 106, 2007 Bankr. LEXIS 2756, *29, 48 Bankr. Ct. Dec. 202.

134. The Defendants misrepresented to the Plaintiff in their employment Contract and verbally that the Plaintiff would be compensated for all unused vacation, sick, and personal days upon resignation from the employment with requisite notice.

135. The Defendants attempted to defraud the Plaintiff by encouraging the Plaintiff to not use his allotted vacation, sick, and personal days, and then refusing to compensate him for his earned but unused days.

136. The Plaintiff, Mr. Bachan, reasonably relied on the Defendants' representations as it was a term of their employment Contract.

137. Mr. Bachan also reasonably relied on Defendants' representations that he would not be needed beyond his resignation date when he offered to stay beyond the July 14, 2017 date.

138. That Defendants then directed Plaintiff to "rewrite" the Resignation Letter, dated July 5 2017.

139. That Plaintiff complained with Defendant's direction and created a second Resignation Letter, dated July 9, 2017, and gave it to Defendants.

140. That Defendants later used that Second Resignation Letter as a fraudulent pretext to attempt to deny Plaintiff his accumulated personal, sick and vacation pay, falsely claiming that Plaintiff had not provided two weeks notice.

141. Defendant's initial representations in their July 13, 2017 letter stated that he would receive his accrued but unused vacation pay and then Defendants apparently changed their minds on July 18, 2017—after Defendants told him he would not be needed and after his official resignation date.

142. If Mr. Bachan knew that he would be penalized for the July 14, 2017 resignation date, he would have insisted on remaining for the full two weeks.

143. Instead, Defendants took advantage of Mr. Bachan's trust and purposely mislead him into believing that he was in compliance with the Employee Manual notice requirement.

144. In recent years, it has been the custom of Defendants to grant accrued but unused vacation time to employees who have given even less, if any, notice than Mr. Bachan.

145. The Plaintiff, Mr. Bachan, had accrued the following unused hours: a) personal–27.45 hours; b) sick–730 hours; c) vacation–88 hours.  Based on Mr. Bachan's hourly pay - $47.63 - and the 9% matched by the Funds for his 401K, Mr. Bachan's damages amount to $50,952.04.

146. The Plaintiff, Mr. Bachan, demands judgment against Defendants, TWU Training, TWU Childcare, Mr. Jenkins, Ms. Hecker, and Ms. Dodd, jointly and severally, in the amount of ten million dollars ($10,000,000.00), plus interest, and no less than $250,000.00 dollars in attorneys' fees for pursuing this action.

## AS AND FOR THE ELEVENTH CAUSE OF ACTION - NEGLIGENT MISREPRESENTATION

147. Plaintiff incorporates by reference the allegations set forth in the proceeding paragraphs of the Complaint as though set forth at length herein, as and against Defendants.

148. That under New York law, "the elements for a negligent misrepresentation claim are that (1) the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment". Official Comm. of Unsecured Creditors of Lois/USA, Inc. v. Conseco Fin. Servicing Corp. (In re Lois/USA, Inc.), 264 B.R. 69, 2001 Bankr.   LEXIS 747 (Bankr.S.D.N.Y. 2001).

149. The Defendants misrepresented to the Plaintiff in their employment Contract and verbally that the Plaintiff would be compensated for all unused vacation, sick, and personal days upon resignation from the employment with requisite notice.

150. The Defendants attempted to defraud the Plaintiff by encouraging the Plaintiff to not use his allotted vacation, sick, and personal days, and then refusing to compensate him for his earned but unused days.

151. The Plaintiff, Mr. Bachan, reasonably relied on the Defendants' representations as it was a term of their employment Contract.

152. The Plaintiff, Mr. Bachan, had accrued the following unused hours: a) personal–27.45 hours; b) sick–730 hours; c) vacation–88 hours.  Based on Mr. Bachan's hourly pay - $47.63 - and the 9% matched by the Funds for his 401K, Mr. Bachan's damages amount to $50,952.04.

153. The Plaintiff, Mr. Bachan, demands judgment against Defendants, TWU Training, TWU Childcare, Mr. Jenkins, Ms. Hecker, and Ms. Dodd, jointly and severally, in the amount of fifty thousand and nine hundred and fifty-two dollars and four cents ($50,952.04), plus interest, and no less than $250,000.00 dollars in attorneys' fees for pursuing this action.

**[INTENTIONALLY LEFT BLANK]**

**WHEREFORE**, Plaintiff, Amitia Bachan, demands judgment against the Defendants, TWU Local 100 NYCT Training and Upgrading Fund, TWU Local 100 NYCT Childcare Fund, Charles Jenkins, Nicole Hecker, and Jennifer Dodd, jointly and severally, for all compensatory, and punitive damages, as set forth above, plus statutory interest.  It is further requested that this Court also grant attorneys' fees of no less than $250,000.00, and the costs and disbursements of this action, and for such other and further relief as to this Court may seem just and proper.

Dated: August 23, 2018

Respectfully Submitted,

Grant M. Lally
Attorney for Plaintiff
Lally & Misir, LLP
220 Old Country Road
Mineola, NY, 11501
516-741-2666

<u>VERIFICATION</u>

STATE OF NEW YORK      )
                       )ss
COUNTY OF _____    )

AMITIA BACHAN, being duly sworn, deposes and says:

I am AMITIA BACHAN, the Plaintiff in this action, Amitia Bachan v. TWU Local 100
NYCT Training and Upgrading Fund; TWU Local 100 NYCT Childcare Fund, Charles Jenkins,
Nicole Hecker, and Jennifer Dodd.  I have read the forgoing Verified Complaint and know the
contents thereof; the same is true to my knowledge except to the matters therein stated to be
alleged upon information and belief, and as to those matters, I believe them to be true.

AMITIA BACHAN

Sworn to before me on this
23 day of August, 2018

Notary Public

GRANT M. LALLY
NOTARY PUBLIC, State of New York
No. 4959526
Qualified in Nassau County
Commission Expires November 27, 1 2 2 0 1